HENRY KNOPFI, Appellant, v. GILSONITE ROOFING & PAVING COMPANY, Respondent.

Kansas City Court of Appeals, February 10, 1902.

1. **Municipal Corporation:** STREET IMPROVEMENTS: WITHDRAWAL OF PETITIONERS: JURISDICTION. Where a statute requires a certain number and class of signers to be presented to a tribunal before it has jurisdiction to act it is ruled in certain jurisdictions that the petitioners may withdraw at any time before action by the tribunal.

Knopfi v. Roofing and Paving Co.

2. ———: ———: WITHDRAWAL OF REMONSTRANTS: JURIS-
DICTION. On the other hand where a certain kind of remonstrance
ousts jurisdiction a withdrawal of remonstrants after the paper is
filed, though before action, will not reconfer jurisdiction. Cases
considered and distinguished.

3. ———: ———: ———: ———. In cities of the third class the
filing of a remonstrance of the majority of the property-holders on
a street proposed to be improved with the city clerk ousts the
jurisdiction of the city council, and the withdrawal of remonstrants
after such filing does not reconfer jurisdiction and the subsequent
proceedings of the council in the premises are void.

4. ———: ———: STATUTORY CONSTRUCTION. A statute re-
lating to street improvements in cities of the third class gives au-
thority to the council to begin the improvement and to carry them
to a termination unless such authority is arrested by the remon-
strance therein provided for. Cases considered and distinguished.

5. ———: ———: JURISDICTION. The record of a city council
must show its jurisdiction to order the improvement and issue tax-
bills therefor.

6. ———: ———: REPORT OF COMMITTEE: ADOPTION: REC-
ORD. The report of a committee to which was referred a remon-
strance against a proposed street improvement was received and
ordered filed. *Held,* such action was an adoption and made the re-
port a part of the record.

7. ———: ———: RECORD: PROPERTY-OWNER. A city council
is bound by its record whether true or false, while the property-
owner is only bound when the record recites truthfully the things
necessary to give jurisdiction.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan,*
Judge.

REVERSED AND REMANDED *(with directions).*

*Barnett & Barnett* for appellant.

(1) Upon the filing of the protest the city council
ceased to have any jurisdiction to proceed with the work.
Laws of 1893, p. 92, sec. 110; Forbis v. Bradbury, 58 Mo.

App. 506. (2) The council can not acquire jurisdiction after the proceeding is dead by the withdrawal of names from the protest. Laws of 1893, p. 92, sec. 110; Laws of 1893, p. 35, sec. 1; Jersey Brewing Co. v. Jersey City, 42 N. J. L. 575; Vanderbeck v. Jersey City, 44 N, J. L. 626; Armstrong v. Ogden City (Utah), 43 Pac. 119; Roebling v. City of Trenton (N. J. L.), 32 Atl. 685; Clinton v. City of Portland, 26 Or. 410; Los Angeles Light Co. v. City of Los Angeles, 156 Cal. 156. (3) The general principle is that the proceedings of magistrates and officers having special and limited jurisdiction must bear on their face the evidence of their jurisdiction or they will be adjudged invalid; and in collateral actions their judgments may be questioned and disregarded if it appear in fact that they had no authority to act in the given case. Miller v. City of Amsterdam, 149 N. Y. 297. (4) The receiving and filing of the report of the committee and the action of the council in passing the ordinance in connection therewith, operates as an adoption of the findings in said report and makes the jurisdiction of the committee the jurisdiction of the city council. (Wilson v. Simons, 36 Atl. 380), and is in effect a finding by the council that a majority had protested. Allen v. City of Portland, 58 Pac. 513; Miller v. City of Amsterdam, 149 N. Y. 297; City of Argentine v. Sims, 39 Pac. 181. (5) The city council having based its jurisdiction on the sole ground that, notwithstanding a majority protest was filed in time, yet a sufficient number had withdrawn their names to reduce the protest below a majority, the contractor holding under the city, after suit is brought and costs are made, can not mend his hold and assert another and different ground of jurisdiction. He is estopped from now asserting a different ground of liability. Railway v. McCarthy, 96 U. S. 258-267; Douville v. Ins. Co. (Mich.) 71, N. W. 517; Continental Ins. Co. v. Waugh, 83 N. W. 81.

*Montgomery & Montgomery* and *Lathrop, Morrow, Fox & Moore* for respondent.

(1)   This paper which the appellant calls a part of the "record," is a report of a committee consisting of three aldermen and two city officers.   This report was not "accepted" or "adopted" by the council, but was "ordered received and placed on file."   It is a polite and parliamentary way of discharging the committee and of informing it that the body chooses to consider the matter for itself.   "Adopting" or "accepting" the report makes the act of the committee the act of the body.   Robert's Rules of Order, secs. 30 and 31; Cushings' Manual, page 168, sec. 293.   (2)   The council in passing the ordinance found that a majority did not remonstrate, and if the committee found otherwise, the action of the council is a repudiation of such finding.   (3)   Thus, it is not necessary for the records of the council to recite every jurisdictional fact.   City of Springfield ex rel. v. Knott, 49 Mo. App. 612; City of Nevada ex rel. v. Morris, 43 Mo. App. 586; Fruin v. Geist, 37 Mo. App. 509; Miller v. City, 149 N. Y. 288.   (4)   So far as we can learn there is no authority which goes any further than to deny the right to withdraw after the time fixed for hearing or after the time given for remonstrating.   On the other hand, there is a line of eminent authorities which hold that a remonstrant may withdraw his name from the remonstrance at any time before action is taken thereon or the statutory period for remonstrating has expired. Hayes v. Jones, 27 Ohio St. 231; Irwin v. Mobile, 57 Ala. 6; Gunnell v. Adams, 34 Ohio St. 44; Andrews v. Auditor, 5 Ohio N. P. 123; Dutton v. City, 42 Ohio St. 216; Slingerland v. Norton, 59 Minn. 351; State v. Eggleston, 34 Kan. 714; State v. Nemaha County, 10 Neb. 32; Black v. Thompson, 112 Ind. 122; Ralston v. Beall (Ind.), 30 N. E. 1095; State v. Sawyer, 52 N. Y. 296.

ELLISON, J.—This proceeding is a bill in equity to annul a taxbill issued against plaintiff's property in the city of Sedalia on account of paving a street on which plaintiff's property abuts. The judgment in the trial court was for defendant. The paving was ordered and contracted for by the city council under the provisions of section 110, page 92, of the Laws of 1893. It is provided by that section that when the council shall deem it necessary to pave or otherwise improve a street within the limits of the city, for which a special taxbill is to be levied, "the council shall by resolution declare said work or improvement necessary to be done, and cause such resolution to be published in some newspaper published in the city for two consecutive weeks; and if a majority of the resident owners of the property liable to taxation therefor shall not within ten days thereafter file with the clerk of the city their protest against such improvements, then the council shall have power to cause such improvement to be made, and to contract therefor and to levy the taxes as herein provided."

In this case a resolution was passed and published as provided, whereupon, within ten days thereafter, a majority of the resident owners of property liable to be taxed, filed with the city clerk their protest and remonstrance against the improvement. Afterwards, but within ten days of the publication aforesaid, a sufficient number of those signing and filing the remonstrance withdrew therefrom to reduce the number remaining below a majority. The question is, was such withdrawal effective so as to continue the power and jurisdiction with the council to contract for the improvement? In other words, could those parties after having filed their remonstrance with the city clerk, withdraw therefrom? It is not contended that they could do so after the expiration of ten days, but it is strongly insisted that within that period, they may. We have not been cited to a case presenting the exact question. It has been held in a number of cases that

where a petition of a certain designated number and class of signers must be presented to a court or other body, before it has jurisdiction to act, that the petitioners may withdraw at any time before it is acted upon by such tribunal or other body. Hays v. Jones, 27 Ohio St. 218; Dutton v. Village of Hanover, 42 Ohio St. 215; Irvin v. Mayor of Mobile, 57 Ala. 6; Slingerland v. Norton, 59 Minn. 351; State v. Eggleson, 34 Kan. 714; State v. Nemaha Co., 10 Neb. 32; Black v. Campbell, 112 Ind. 122. These cases involve proceedings to tax property, to remove county seats, to open public roads, and the like. In each of them the statute involved is construed to mean that the petitioners have a right to withdraw their consent up to the time the petition has been acted upon, or at least up to the time appointed for hearing. The effect of them is, that jurisdiction is not complete in the tribunal petitioned unless the requisite number of signers are in favor of the thing petitioned for at the *time* substantial action is taken thereunder.

On the other hand, in construing statutes very similar to ours, it has been held that where a certain remonstrance ousts jurisdiction, a withdrawal from the remonstrance after it is presented, though before final action is taken, will not reconfer jurisdiction. Brewery v. Jersey City, 42 N. J. L. 575; Armstrong v. Ogden City, 12 Utah 476; Vanderbeck v. Jersey City, 44 N. J. L. 626; Roebling v. Trenton, 58 N. J. L. 40; City Imp. Co. v. Babcock, 123 Cal. 205. In the first case it was said: ". . . The next contention on the part of the city is that, although such a remonstrance was presented, yet afterwards, some of those remonstrating changed their minds, withdrew their opposition, and erased their names from the paper. It is insisted that thus all difficulty was removed, and the board of public works were not thereafter prohibited from proceeding with the improvement. The evidence shows that the erasures were made several days after the day fixed for the hearing. No adjournment of the pro-

ceedings is claimed or appears to have been made.  No new notice was given to the parties interested.

"Under such circumstances, I have no hesitation in concluding that the board had no power to proceed to make this contract.  The section above referred to expressly forbids it, if, on the day fixed for hearing a sufficient remonstrance is presented.  The board of public works was thereby totally deprived of power to proceed.  No power could be subsequently acquired in that proceeding.  A new proceeding might be initiated, and after due notice, new power could be obtained.  The parties interested were entitled to notice of any action affecting their interests.  It may be that others who desired to object refrained from doing so, upon ascertaining that a sufficient remonstrance was already filed."

In each of the New Jersey cases just cited those remonstrating attempted to withdraw from the remonstrance after the time limited for their protest.  But the court did not put its decision on that ground.  The language is general, that after the requisite protest is once filed, jurisdiction is ousted.  In the Vanderbeck case the court said:  "The single question presented is whether under the charter of Jersey City, that corporation, after a remonstrance signed by owners of more than half the property liable to assessment for a public improvement like that in controversy, can, by subsequent withdrawal of the names of some of the remonstrants, get jurisdiction to proceed with the improvement.  The question is not an open one in this court, for in the case of Jersey City Brewing Co. v. Jersey City, 13 Vroom, 575, under a state of facts almost identical with those before us now it was held that under the twenty-fourth section of the supplement to the Jersey City charter, passed in 1873, a remonstrance so filed, ousted the city of jurisdiction to proceed with the work, and that it could not be restored by the subsequent withdrawal of names therefrom to reduce it below the one-half representation."  In the Roebling case it is broadly

stated that, "By the filing of the remonstrance, or refusal, within the statutory limit, signed by the requisite number, the city was deprived of the power to proceed, and that power could not be restored to the city by the attempted withdrawal of any number of the persons assessed."

So it has been held in a proceeding to open a public road, that where jurisdiction has once been conferred by petition, notice and bond for costs, a subsequent withdrawal of a portion of the petitioners reducing the number below that required, will not withdraw jurisdiction in the commissioners to proceed.   Grinnell v. Adams, 34 Ohio St. 44.   And the Supreme Court of Iowa has gone so far as to hold that a petitioner for an election to remove a county seat could not withdraw at the time the petition is presented to the board of supervisors and before any action is taken.   Loomis v. Bailey, 45 Iowa 400.

From the foregoing cases, it seems clear that the question to settle in order to determine a given case is, at what time is jurisdiction conferred; or, at what time is jurisdiction withdrawn?   For whenever jurisdiction is once conferred, it can not be withdrawn; and, if once withdrawn, it can not be conferred by the parties concerned, unless, of course, the statute so authorizes.   Thus it has been held that the appointment of a defendant as consul of a foreign power will not withdraw jurisdiction from a suit pending in a State court. Koppel v. Heinrichs, 1 Barb. 449.   And when a suit is instituted in a State court both parties being residents, one of them afterwards removing out of the State, is no reason for withdrawing jurisdiction of the State court by removal to the Federal court.   Tapley v. Martin, 116 Mass. 275; Upton v. Railway, 25 N. J. Eq. 372; Mollan v. Torrence, 9 Wheat. 537.   When at beginning of suit the sum sued for is large enough to vest jurisdiction in the court, it can not be withdrawn by subsequently reducing the sum.   Cooke v. United States, 2 Wall. 218.   And where proper application for re-

moval of a cause from a State to a Federal court is once made, the jurisdiction of the former instantly ceases. Durham v. Ins. Co., 46 Texas 182.

It will be noticed that under the statute in question the city council has jurisdiction to order the improvement, unless it is withdrawn by a certain number of property-owners. What then was meant by our statute in this respect may be the more clearly seen by omitting the word, "not," and inserting at another place the word, "no," and reading it thus (City Imp. Co. v. Babcock, 123 Cal. 205, 208). "And if a majority of the resident owners of the property liable to taxation therefor shall, within ten days thereafter, file with the clerk of the city their protest against such improvements, then the council shall have no power to cause such improvements to be made, or to contract therefor, or to levy the tax as herein provided."

In this case, as we stated at the outset, a majority of the owners of property did file their remonstrance with the city clerk within the time limited. They therefore fully met the requirement of the statute, and manifestly, by that act, destroyed the jurisdiction of the council. Any other construction is liable to work serious harm, as may be illustrated. Keeping in mind that no petition is required by this statute to set the machinery for public improvement in motion, and that obstructive measures only are contemplated; suppose that there are fifty owners of property on the street to be improved, *all* of them against the improvement, and that twenty-six of them file their remonstrance, say on the eighth day, and that the remaining twenty-four intending to solicit and procure a sufficient remonstrance, go to the city clerk's office and find that a majority have already duly filed their remonstrance, and thereby fulfilled their intention. Seeing that the terms and requirements of the law necessary to defeat the improvement have been fully complied with, they rely upon the condition as it then presents itself. But for the proper

remonstrance already filed, they would have, themselves, taken steps to stop the proceeding. Afterwards, one of the remonstrants withdraws his name, it leaves less than a majority of property-owners, and thus a tax is fastened upon the entire fifty when all but the one who has changed his mind are opposed to it. It will not do to say that objectors must keep watch of the proceeding until the ten days expire to see if any one withdraws. It would frequently be practically impossible. Those desiring to withdraw could, without notice, file their withdrawal within a few minutes of the expiration of the time limited, and thus deprive other objectors of an opportunity of supplying their places.

When the remonstrance is filed with the city clerk at any time within the ten days, the resolution of the council providing for the improvement is dead and can not be revived, except by a new proceeding. The ten-day limit prescribed by the act is a time given in which the property-owner may come to a conclusion and act upon it by filing his remonstrance. The statute has not given any time in which such owner may change his mind and withdraw from the remonstrance *after* it has been filed with the clerk. It has then become a part of the city records in the care and custody of the clerk and can not be subjected to a change or alteration with every change of notion of a signer. When the requisite remonstrance is once completed and placed with the depository designated by the law, that proceeding is at an end.

That such is the proper construction of the statute would seem to be evidenced by the Legislature itself, for, at the same session at which this statute was enacted, another law was passed authorizing cities with special charters to construct street and other improvements in much the same way as is provided by the act we are now construing, and in which a right to withdraw from a remonstrance was specially reserved. The language used is the following: "If the remonstrance of the resident property-owners above mentioned shall be

filed with the city clerk as herein provided, then the power of the common council to make the proposed improvement and pay therefor in special taxbills shall cease until a sufficient number of the persons so remonstrating or their grantees shall, in writing, withdraw their names, or the property represented by them, from such remonstrance so that said remonstrance shall cease to represent a majority of the resident property-owners as above provided, when the common council may proceed in the manner above mentioned to cause the proposed improvement to be made." Laws 1893, p. 34, sec. 1.

We therefore hold that the remonstrance filed with the city clerk annulled the proceedings of the city council and rendered void all subsequent action.

In order to avoid the force of the foregoing statement that the council has jurisdiction in the premises which is withdrawn by the remonstrance provided for, plaintiff suggests that jurisdiction is conferred by the assent of a majority of the property-owners and that the remonstrance is the means adopted to ascertain if a majority do assent; their failure to remonstrate being taken as an affirmative granting of jurisdiction. It may be that the Legislature assumed that those failing to remonstrate against an improvement involving taxes, were in favor of it. But it is as plain as noonday that authority is given the council to begin the proceedings, and to carry them to termination unless, in the manner designated, such authority is arrested or withdrawn.

There are some analogous cases decided by the Supreme Court of Indiana in which occur expressions seemingly opposed to the view we have taken on the general right to withdraw. In State v. Gerhart, 145 Ind. 439, the statute regulating the sale of intoxicating liquors provided: "If, three days before any regular session of the board of commissioners of any county, a remonstrance in writing, signed by a major-

ity of the legal voters of any township or ward in any city situated in said county, shall be filed with the auditor of said county," the board can not grant a license for a "period of two years from the date of the filing of such remonstrance." The point decided was that a remonstrant could not withdraw after the three days; but it is remarked by the court that he could withdraw before the three days began to run, though the remonstrance had been filed. The phraseology of that statute discloses that the time contemplated for filing the remonstrance was the third day before the session of the board, and it is disclosed that if such remonstrance shall be filed at that time, the license shall not be granted.

We have endeavored to show that the phraseology of our statute is essentially different. Our statute contemplates that the remonstrance may be filed with the clerk on any day within ten days and when so filed the authority of the council is withdrawn.

In Sauntman v. Maxwell, 154 Ind. 114, the drainage statute provided for filing a petition for drainage in the clerk's office (of the court having jurisdiction) signed by landowers, for giving notice, for docketing the cause after notice thereof, for the allowance of ten days after docketing in which landowners might object to the form of the petition and the competency of the drainage commissioners, and for a hearing of such objections at the end of the ten days: "Providing, that if at this stage of the proceedings two-thirds in number of the landowners named as such in such petition, resident in the county or counties where the lands affected are situated, shall remonstrate in writing against the construction of such drain or ditch, such petition shall be dismissed at the cost of the petitioner." The point for decision was whether remonstrants might withdraw after the time allowed in which they might remonstrate, and it was held they could not, but the court remarked, as in the Gerhart case, that before that time they might. But it will be noticed the statute is unlike

ours; it does not say that the filing of a proper remonstrance with a certain officer, shall withdraw power.    It seems to contemplate a remonstrance to be presented at the end of ten days.    The difference between the Indiana statutes and ours is this: that while the former may be couched in ambiguous language susceptible of the construction given them, ours is stated in clear and direct words which must be construed to mean what they plainly express.

But defendant contended at the argument that if the foregoing view be conceded to be correct, yet the council may not have relied on the withdrawal of remonstrants as giving it authority to proceed with the work, and may not have relied on the report of its committee; but that it may, by other means, not shown by the record, have ascertained the remonstrance before withdrawals therefrom did not contain a majority of the property-owners.    The suggestions as presented in the brief are that:    "There was no evidence (1) as to how many resident owners of property there were who were entitled to remonstrate, or (2) as to how many of them signed the remonstrance read in evidence, or (3) as to how many of them did not sign, or (4) as to the authority of agents who signed for their principals, to sign, or (5) as to the authority of officers of corporations to sign for the corporations, *unless* the report of the special committee be evidence of these facts."

The record of the city council was introduced in evidence and, in relation to the paving in question, it shows that the council passed the preliminary resolution declaring the paving necessary on the twenty-first day of May, 1897: that publication of its adoption beginning on May 23, was had for two weeks, expiring on June 6, thus fixing the expiration of the time for remonstrance as June 16; that on June 14 a remonstrance was filed with the city clerk purporting to be signed by thirty-two resident property-owners abutting on the street; that on the next day, June 15, a written withdrawal

of five of these was filed with the clerk; that on June 21, the remonstrance and the written withdrawals were read to the council in session and were by the council referred to a committee.    Afterwards, on June 28, this committee reported to the council that the total number of resident property-owners on that part of the street to be paved was sixty-one, and that the number of resident property-owners signing the remonstrance was thirty-two, less the five names withdrawn after it was filed, leaving a total number of remonstrants as twenty-seven.    That the committee stated there were but twenty-seven remonstrants, under the advice of the city counsellor that the five had a right to withdraw at the time they filed their withdrawal.    This report was on motion "received and placed on file."    And at the same meeting the ordinance for the paving of the street was introduced and placed on its first and second reading.    It was passed at a subsequent meeting.

It can not be supposed that proceedings for street improvement, which we know in many cases involve the power of eminent domain, and in all cases the power of taxation, can be carried on by a city council without a record of the proceedings in all essential particulars.    So, therefore, it may be safely said that the record of the city council must show that the council had jurisdiction and authority to order the improvement and the issuance of the taxbills therefor.    This has been the policy in this State as evidenced by the decisions of the Supreme Court in kindred cases.    Zimmerman v. Snowden, 88 Mo. 218; Whitely v. Platte Co., 73 Mo. 30; Chicago Ry. Co. v. Young, 96 Mo. 39.

A remonstrance was laid before the council which had been filed with the city clerk in proper time.    The withdrawal of five of the remonstrants was also placed before the council.    The council referred the matter to a committee for investigation and report.    That committee reported that there were sixty-one property-owners and that thirty-two had filed

their remonstrance and that five had withdrawn, the record showing the withdrawals to have been made on the day following the filing with the clerk, but within ten days limit. The report stated that the committee had been advised by the city counsellor that those withdrawing had a right to do so after the remonstrance was filed. The council received the report and placed it on file and thereupon immediately put the ordinance for this improvement through the preliminary stage of passage. It is evident from the record of the council that it based its right and power to proceed, on the report of the committee that a majority of remonstrants had become a minority by withdrawals after the report was filed, and that such withdrawals were effective so as to prevent the defeat of their jurisdiction to order the improvement for which the taxbills were issued. The record shows no other or different consideration or disposition of the remonstrance. In such circumstances, receiving and filing the report of the committee was an adoption of the report and it became a part of the record of the council upon which the improvement was based. It, therefore, appears from the record that the council in passing the ordinance and letting the contract for the improvement in question, acted in the face of the legal protest of a majority of the property-owners, and in such case it had no jurisdiction and its action was void. Miller v. City of Amsterdam, 149 N. Y. 288; Allen v. City of Portland, 35 Oregon 420.

It is said by defendant that the council, though adopting the finding of the committee as its own, has no authority to make a finding of facts as to the number of petitioners or remonstrants which will bind any one else. In the absence of statutory authority the action of the council can not bind the property-owner, but that does not say that its action will not bind itself and characterize the result of that action as void. If the record proceeding of such tribunals, exercising like power to that attempted here, shows upon its face that

the tribunal has no jurisdiction, then the proceeding is void, even though if the record had truly recited the facts it would have shown jurisdiction. And although the record may recite the things necessary to confer jurisdiction, yet the property-owner may dispute it and show the fact to defeat jurisdiction. In other words, the tribunal is bound by its record whether true or false; while the property-owner is only bound when it recites, *truthfully*, those things necessary to give jurisdiction. Thus in this case, the record showing on its face that jurisdiction was withdrawn from the council, we held its subsequent action void, even though it should be conceded that there were facts outside the record which would have conferred jurisdiction. And yet if the record had recited those things necessary to continue jurisdiction with the council, the plaintiff would have been at liberty to show it was a false recital and that jurisdiction was in fact withdrawn.

The case was well presented by the respective counsel, both in oral argument and in briefs, and we have arrived at the conclusions above indicated after much consideration. With the concurrence of the other judges, the judgment will be reversed and the cause remanded with directions to enter decree for plaintiff.